UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
SUSAN SOLOMON,

                        Plaintiff,                        Docket No.: 20-CV-5227

     -against-                        **COMPLAINT**

COUNTY OF NASSAU,

                        Defendant.
---------------------------------------------------------------------X

      Plaintiff, Susan Solomon, by and through her attorneys, RICOTTA & MARKS, P.C., complaining of Defendant herein, alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the discrimination against Plaintiff in the terms, conditions, and privileges of her employment, as well as the deprivation by Defendants, under the policies, ordinances, custom and usage of all rights, privileges and immunities secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States and all of the laws and statutes thereunder. This action also arises under the Americans with Disabilities Act, and any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All conditions precedent to maintaining this action have been fulfilled. A Charge of Discrimination was filed with the State Division of Human Rights, which was cross-filed with the EEOC. A Notice of Right to sue was issued by the EEOC in this matter, which was received on or about August 4, 2020. This action is filed within ninety (90) days of receipt of said Right to Sue letter.

## PARTIES

5. At all times hereinafter mentioned, Plaintiff Susan Solomon ("Solomon") was and still is a resident of the County of Nassau, State of New York.

6. Defendant, County of Nassau ("County"), was at all times relevant to the matters set forth below, and is currently, a municipal corporation and a public employer, located at 1550 Franklin Avenue, Mineola, New York 11501 in the County of Nassau.

## FACTS

7. Solomon is a female who suffers from disabilities. Specifically, Solomon suffers from asthma and severe environmental allergies. Solomon's disabilities impact her ability to breathe and present a risk of anaphylaxis.

8. In or around 1993, Susan was hired by the County as Accounting Assistant I in the

2

Comptroller's Office. In approximately 1995, Susan was transferred to the Department of Public Works. Thereafter, Susan was repeatedly promoted, ultimately receiving the title of Accounting Assistant IV.

9. Throughout the course of Solomon's employment with County, she has performed her job in an exemplary manner.

10. In or around 2011, Susan's office building was renovated, which included tarring the roof and epoxying the floor. Susan was sickened by the fumes, sought medical treatment, and was diagnosed with severe asthma and environmental allergies. Due to these conditions, exposure to dust, pollen, venomous insects, perfumes, certain cleaning products, and other noxious vapors cause her to suffer debilitating respiratory problems and present a risk of anaphylaxis.

11. At around this same time, Susan advised Kenneth Arnold (Deputy Commissioner of Public Works) and Jim Moore (Building Division – Title Unknown) of her asthma/allergy related health issues. Susan also advised several of her co-workers of her sensitivity to perfumes; most were understanding of Susan's disability and agreed to refrain from wearing perfume in Susan's presence.

12. In or around 2015, Diane Pyne, a coworker with knowledge of Susan's health

condition, refused to not wear perfume in Susan's presence, and began purposefully exposing Susan to her perfume by unnecessarily passing by Susan's work space while wearing large amounts of perfume, and by rubbing perfume into documents she knew Susan would be handling. As a result, Susan became sick and missed a substantial amount of work due to her allergies.

13. In or around August 2015, Susan complained about perfume in the office to Mary Elizabeth Osterman (HR and EEO Representative). Osterman offered to allow Susan to change offices. However, this did not accommodate her, as the offices offered were closer to Pyne's office, and thus would have caused Susan to be exposed to even more perfume. Thus, Susan did not switch offices. Thereafter, throughout the remainder of 2015 and 2016, Susan continued to be sickened by perfume and scented products worn by Pyne and others. Susan complained during this period, including to Richard Millett (Chief Deputy Commissioner of Public Works), Shila Shah-Gavnoudias (Commissioner of Public Works), Arnold, Osterman, and others.

14. On or about September 7, 2016, following a grievance, EEO complaint and a determination by HR that Pyne was purposefully exposing Susan to perfume, a meeting was held to discuss transferring Susan elsewhere. Susan was given the option of transferring to one of two locations – Eisenhower Park or Cantiague Rock Road.

15. Shortly thereafter, Susan inspected both locations. Susan decided against the Eisenhower Park location, as it smelled of mold and mildew, which would have exacerbated her asthma, and advised Millet that she would prefer a transfer to Cantiague Rock Road.

16. On or about September 22, 2016, Susan transferred to Cantiague Rock Road. On her first day at the new location, Susan was sickened by the strong odor of scented cleaning products. Susan complained to Mike Fasano (Head of Road Maintenance) who advised the smell would only be temporary. This same day, flies, bees, and yellow jackets entered Susan's office due to an outside door having been propped open. Susan advised Fasano that she was allergic and carried an Epi-Pen, and Fasano told Susan she could close the door. But, shortly after closing the door, someone propped it back open, allowing more stinging insects to enter. Susan complained to Ostermann to install screens, but her concerns were ignored. So, Susan purchased and installed screens herself. It would not have been an undue hardship for Respondent to accommodate Susan with screens to prevent the insects from entering through the open window.

17. On or about September 26, 2016, Susan met with Billy Pappas (Special Investigator) regarding her prior EEO complaint. During this discussion, Susan complained that her location did not accommodate her asthma, as it smelled of

cleaning products and stinging insects swarmed inside the building. Pappas promised to speak with Millet to arrange for screens to be installed.

18. On or about September 28, 2016, after calling out sick due to the chemical odors, Susan complained again to Millet, and asked if there was a different location she could work from, as Cantiague Rock Road was making her ill. Millet advised that he would look into it, but that he did not believe another location was available.

19. On or about September 29, 2016, Due to a strong chemical smell that would have sickened Susan, she utilized a sick day.

20. Susan returned to work from an 11-day vacation on October 11, 2016. Susan brought screening and installed it in the windows herself. While doing so, Susan was exposed to mouse droppings in the window sill, and the smell of scented products wafted into her office. As this office space was untenable, Susan again contacted Millet, asking to be relocated. Millet agreed to relocate Susan to the Eisenhower Park location.

21. On or about October 13, 2016, Susan moved to the new office. This office also smelled of chemical cleaning products that wafted in from a nearby bathroom, and there was an old air conditioner in the vicinity that spewed mold. Susan spoke to Mike Karcinski (Head of Facilities Management) about the issue. Karcinski angrily replied that Susan was lucky to have been moved at all and warned that she

better not start trouble. Susan Contacted Rich Millet who had the air conditioner replaced.

22. Thereafter, Susan was repeatedly sickened at work by the smell of chemical cleaning products, fumes emanating from an old industrial heater, and as a result was required to take several sick days. Susan complained to Karcinski and Fred Maroni (Superintendent of Buildings) on several occasions during this period, but to no avail. As a result of Susan's complaints, Karcinski advised the other employees in Susan's vicinity not to speak with her, as she was "trouble." Additionally, the door to a nearby Carpenter's bay was frequently left open, allowing fumes from painting and staining products to waft into Susan's office. Karcinski and Maroni ignored Susan's request that the door to the bay be kept closed, so Susan put up a sign asking that an outside door be left open so that fresh air could come into the building. The sign was thrown in the trash. As a result, Susan was forced to stay inside her office with the door closed, venturing out only to use the bathroom or make copies. This was an imperfect solution, as fumes still wafted under her door, causing frequent headaches.

23. During the summer months, in addition to being sickened by fumes, wasp nests routinely formed near Susan's office. Susan lived in fear of being stung and experiencing a health emergency. Susan complained about this to Maroni and Karcinski, and later to Karcinski's replacement, Tony Marino, as well as other

members of management. The nests were removed from the windows and new nests formed. Window vents were sealed but wasps/yellow jackets continued to enter from the outside and Susan was merely provided with a fly swatter.

24. On or about May 9, 2018, Susan again complained about the wasp problem to Osterman and others, noting that the issue was potentially life threatening. As a result, Susan was transferred to 1 West Street.

25. Susan's new office location at 1 West Street did not accommodate her. To get to the office, it was necessary to walk through an open cubicle area littered with dusty old broken copy machines, file cabinets piled high with decades old paperwork and files, and dust and mold laden piles of paper haphazardly dumped in front of a garbage pail shredder that had apparently not been emptied in years. Similar clutter was located directly across from Susan's office. These items emitted a musty odor and threw up dust, chemical fumes, and spores whenever disturbed, thus exacerbating Susan's breathing condition. The area was also poorly ventilated, thus causing the allergens to stagnate within the office area. Susan complained about this to Osterman and Kerrin Huber (Human Resources), but was dismissed. The items were never removed, and Susan was advised that the County was unwilling to move her to another office location.

26. Outside Susan's office were two cubicles occupied by employees of the

Comptroller's Office. These employees frequently cleaned their desks with scented cleaners that caused Susan to experience headaches and dizziness. Susan explained her health issues to these employees and asked them not to use such products, instead suggesting that they use alcohol or hydrogen peroxide for which Susan would pay. Susan then complained to Osterman in Spring 2018, but the situation was never rectified.

27. On or about June 2018, Susan was regularly sickened by fumes emanating from a candle or plug in air-freshener located in the office of John Skinner (Commissioner of Labor), which was near her office. Susan explained her health issues and asked the employees in that office to refrain from using such products. However, they continued burning candles and using noxious air fresheners thereafter. Susan then complained to Osterman, but the situation was never rectified.

28. In summer 2018, Susan attempted to use the air conditioner in her office. The unit was old and crumbling from rust. When turned on, it spewed dust and particulate matter, and leaked filthy water onto the carpet, which then grew mold. Susan complained to maintenance, but the air conditioner was never properly fixed, leaving Susan to endure the sweltering heat.

29. In or around September 2018, Susan complained to Osterman, Huber, and others that large amounts of mold was growing in the stairwell near her office, which was

making her sick. An outside cleaning company was then retained to remediate the mold problem, but this involved the use of noxious chemicals that also made Susan sick. Susan asked for a fan to control the airflow, but was rebuffed.

30. In or around October 2018, the heating system in Susan's office building broke, and heat was rerouted from the radiators to the vents. This resulted in black soot being spewed from the vents that sickened Susan. A filter from an air conditioning unit was later taped over the vent, but it did little to prevent the spread of allergens into the air. Susan complained about this to Osterman, Arnold, Maroni, and Huber, but was rebuffed.

31. In or around December 2018, the stairwell was painted, causing fumes to waft into Susan's office and make her ill. On or about this same time, Susan met with Osterman to discuss the horrible working conditions in her building, and the fact she was constantly ill as a result of them. Osterman was dismissive, stating the whole building was just bad and Susan would just have to adjust.

32. In or around December 2018, due the County's refusal to provide a reasonable accommodation, Susan retired from her position in the County, which was in effect a constructive discharge.

33. As Susan had significant expenses related to her health condition, including out of

pocket medical expenses and the need for a whole house air purifier, Susan filed for hardship waiver so that her severance would be paid in a lump sum. The County denied Susan's hardship waiver, which was, upon information and belief, in retaliation for her requests for a reasonable accommodation.

## AS A FIRST AND SECOND CAUSE OF ACTION
## FOR DISCRIMINATION AND RETALIATION UNDER FEDERAL LAW

34. Plaintiff repeats, reiterates, and realleges each and every allegation in the above paragraphs of this complaint.

35. Defendant County has, while acting under color of state law, deprived Plaintiff of her constitutional rights, as secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983, and all related provisions of the New York State Constitution. County and County's supervisors have intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

   a. The County's custom or practice of discriminating against and/or harassing Plaintiff based his disability, refusing to provide reasonable accommodations, and/or engaging in protected activities, as outlined in further detail above. The discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

   b. Supervisors failed to properly investigate and address allegations of harassment and/or discrimination.

   c. Inadequate training/supervision was so likely to result in the harassment, and/or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d. Policymakers, as outlined above, engaged in and/or tacitly condoned the harassment and/or discrimination.

36. By reason of Defendant's violation of Plaintiff's rights, Plaintiff has suffered a loss of monetary benefits associated with her employment in addition to suffering physical, emotional, and other damages. Plaintiff is also entitled to all forms of equitable relief, which may alleviate and/or redress the unlawful activities described above.

## AS A THIRD AND FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION AND RETALIATION UNDER FEDERAL LAW

37. Plaintiff repeats, reiterates, and realleges each and every allegation in the above paragraphs of this complaint.

38. As described above, Defendant has unlawfully discriminated against Plaintiff due to her disability and/or perceived disability in violation of the Americans with Disabilities Act by subjecting her to a hostile work environment, adverse employment actions, and an atmosphere of adverse employment actions, as well as refusing to provide a reasonable accommodation.

39. Defendant has also subjected Plaintiff to retaliation due to her complaints about the discrimination to which she was subjected in violation of the Americans with Disabilities Act.

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory, emotional, physical, lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Long Island City, New York
October 29, 2020

RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
31-10 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

_____
Thomas Ricotta