UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
SUSAN SOLOMON,

                                                                **OPINION AND ORDER**

                              Plaintiff,                        CV 20–5227 (AYS)

            -against-

COUNTY OF NASSAU,

                              Defendant.
-------------------------------------------------X
**SHIELDS, Magistrate Judge,**

     Plaintiff Susan Solomon ("Solomon" or "Plaintiff") commenced this action on October 29, 2020, against defendant the County of Nassau (the "County" or "Defendant") alleging violations of 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 12101 et seq. (Americans with Disabilities Act ("ADA")). Plaintiff alleges that Defendant subjected her to discrimination, a hostile work environment and retaliation based on her disability while she worked for Defendant as an Accounting Assistant. See Compl., Docket Entry ("DE") [1].

     Presently before this Court is Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See DE [13].  For the reasons set forth below, the motion is granted in part and denied in part. Specifically, the motion is denied with respect to Plaintiff's municipal liability claims, discrimination and retaliation claims under the ADA. The motion is granted with prejudice regarding Plaintiff's Fourteenth Amendment equal protection and due process claims, and the timeliness of Plaintiff's claims. Finally, the motion is granted without prejudice with respect to Plaintiff's constructive discharge claim.

BACKGROUND

I.    <u>Documents Considered</u>

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by Defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-153 (2d Cir. 2002); <u>see</u> <u>Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of a documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Glob. Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 157 (2d Cir. 2006) (quoting <u>Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc.</u>, 146 F.3d 66, 70 (2d Cir. 1998)).

The Court turns now to discuss the facts set forth in Plaintiff's Complaint, construed in her favor.

II.  Facts

    A.  The Parties

Plaintiff is a female resident of the County of Nassau, State of New York, who suffers from asthma and severe environmental allergies. Compl. ¶¶ 5, 7. Defendant is a municipal corporation and public employer. Id. ¶ 6. In 1993, Defendant hired Plaintiff as an Account Assistant I in the Comptroller's Office. Id. ¶ 8. Defendant transferred Plaintiff to the Department of Public Works in 1995 and ultimately promoted her to an Accounting Assistant IV. Id.

In 2011, the office building where Plaintiff had worked was renovated, which included tarring the roof and epoxying the floor. Id. ¶ 10. Plaintiff became sick from the fumes, sought medical treatment, and was diagnosed with severe asthma and environmental allergies. Id. Due to these conditions, Plaintiff suffers from respiratory problems and faces a risk of anaphylaxis when exposed to dust, pollen, venomous insects, perfumes, certain cleaning products, and other noxious vapors. Id. During this period, Plaintiff advised Kenneth Arnold, the Deputy Commissioner of Public Works, and Jim Moore, an employee of the Building Division, of her asthma and allergy-related health issues. Id. ¶ 11. Likewise, Plaintiff advised several of her coworkers concerning her sensitivity to perfumes. Id. Most of her colleagues empathized with her condition and agreed to refrain from wearing perfume in Plaintiff's presence. Id.

    B. August 2015 Complaint

In 2015, Diane Pyne, a co-worker with knowledge of Plaintiff's health condition, refused to not wear perfume in Plaintiff's presence, and, according to Plaintiff, began purposefully exposing Plaintiff to her perfume by unnecessarily passing by Plaintiff's workspace while wearing large amounts of perfume and rubbing perfume into documents she knew Plaintiff

would be handling. Id. ¶ 12. Plaintiff, consequently, became sick and missed a substantial amount of work due to her allergic reaction. Id.

In August 2015, Plaintiff filed a complaint with Defendant's Equal Employment Office regarding her exposure to perfume in the office. Id. ¶ 13. Mary Elizabeth Osterman, the HR and EEO Representative, responded to this complaint by offering Plaintiff an opportunity to change offices. Id. Plaintiff did not agree to change offices since the offices offered were closer to Pyne's office, and would have resulted in Plaintiff being further exposed to perfume. Id. Consequently, throughout the remainder of 2015 and 2016, Plaintiff's exposure to perfume and scented products worn by Pyne and other colleagues persisted, which aggravated her condition.

C.  September 2016 Complaints

In September 2016, Plaintiff complained that she was still suffering from the environment due to the scent of perfume. Id. Defendant's HR department determined thereafter that Pyne was purposefully exposing Plaintiff to perfume. Id. ¶ 14. Defendant offered Plaintiff a choice of two different work locations: (1) a location in Hicksville on Cantiague Rock Road or (2) a location in East Meadow at Eisenhower Park. Id. After inspecting both locations, Plaintiff decided to transfer to the Cantiague Rock Road location since the Eisenhower Park location smelled of mold and mildew that would have exacerbated her asthma. Id. ¶ 15. After moving to the new location on September 22, Plaintiff was sickened by the scent of cleaning products that day. Id. ¶ 16. Plaintiff complained to Mike Fasano, the Head of Road Maintenance, who advised the odor would only be temporary. Id. Plaintiff further stated that a door had been propped open, which caused flies, bees, and yellow jackets to enter into her office. Id. Plaintiff told Fasano that she was allergic and carried an Epi-Pen. Id. Although Fasano advised Soloman to close the door, it propped open again and more insects entered into the office. Id. Plaintiff, consequently,

complained to Osterman about this situation and requested the installation of screens in her office. Id. Plaintiff's request was ignored so she purchased her own screens. Id.

On September 26, Plaintiff met with Billy Pappas, a County Special Investigator, regarding her prior EEO complaint and informed him that the Hicksville location did not accommodate her asthma due to the smell of cleaning products, and the prior incident of stinging insects flying into the building. Id. ¶ 17. Plaintiff further complained to Richard Millett, the Chief Deputy Commissioner of Public Works, on September 28 and requested another transfer to a different location. Id. ¶ 18. While Millett indicated that he would investigate it, he noted that he did not believe another location would be available. Id.

Plaintiff stated that she was out of the office between September 29 and October 10 after utilizing two sick days due to a strong chemical odor in the workspace and taking an 11-day vacation. Id. ¶ 19-20. Upon returning from her vacation on October 11, Plaintiff brought screening to the office and installed it in the windows herself. Id. ¶ 20. During this process, she exposed herself to mouse droppings in the windowsill and the smell of scented products wafted into her office. Id. Plaintiff later requested to be relocated to the Eisenhower Park location and Millett approved this request. Id.

D.  October 2016 Complaint

On October 13, 2016, Plaintiff moved into her new office at Eisenhower Park. Id. ¶ 21. Plaintiff, however, complained that the workspace also smelled of chemical cleaning products and an old air conditioner in the vicinity had spewed mold. Id. Plaintiff notified Mike Karcinski, the Head of Facilities Management, regarding these issues. In response to Plaintiff's complaint, Karcinski replied that Plaintiff was lucky to have been moved at all and warned that she better not start trouble. Id. Millett eventually replaced the air conditioner. Id. Thereafter, however,

Plaintiff states that she was repeatedly sickened by the smell of chemical cleaning products and fumes emanating from an old industrial heater, which required her to take several sick days. Id. ¶ 22. Plaintiff complained to Karcinski and Fred Maroni, the Superintendent of Buildings, on several occasions during this period, but neither followed through to remedy the issues. Id. In response to these complaints, Karcinski advised the other employees in Plaintiff's vicinity to not speak with her since she was "trouble." Id. Moreover, Karcinski and Maroni ignored Plaintiff's request to keep the door to a nearby carpenter's bay closed since it was frequently left open allowing fumes from painting and staining products to waft into Plaintiff's office. Id. As a result, Plaintiff made a sign that the outside door be left open so that fresh air could come into the building, but her sign was thrown in the trash. Id. Under these circumstances, Plaintiff felt the need to stay inside her office with the door closed and only left to use the bathroom and make copies. Id. Fumes continued to waft under her door that caused Plaintiff to suffer from frequent headaches. Id.

E.  Summer 2017 Complaint

During the summer of 2017, Plaintiff complained of wasp nests that routinely formed near her office at the Eisenhower Park location and feared being stung and experiencing a health emergency. Id. ¶ 23. Although Defendant's management team removed these wasp nests, new nests formed and wasps continued to enter from outside through the window vents. Id.

F.  May 2018 Complaints

On May 9, 2018, Plaintiff further complained about the wasp problem to Osterman and was thereafter transferred to a new office location at 1 West Street in Mineola. Id. ¶ 24. Plaintiff, however, did not feel accommodated by her new office. Id. ¶ 25. For instance, Plaintiff had to walk through "an open cubicle area that was littered with dusty old broken copy machines, file

cabinets piled high with decades old paperwork and files, and dust and mold laden piles of paper haphazardly dumped in front of a garbage pail shredder that had apparently not been emptied in years." Id. These items emitted a musty odor and threw up dust, chemical fumes, and spores whenever disturbed, which aggravated Plaintiff's breathing condition. Id. The area was poorly ventilated as well. Id. Plaintiff complained about these conditions in the workspace to Osterman and Kerrin Huber at Human Resources, but they dismissed it. Id. Defendant was also unwilling to move Plaintiff to another office. Id. Two employees of the Comptroller's Office who occupied cubicles outside Plaintiff's office frequently cleaned their desks with scented cleaners that caused Plaintiff to experience headaches and dizziness. Id. ¶ 26. Plaintiff explained her health issues to these employees and asked them to use alcohol or hydrogen peroxide in lieu of their cleaning products. Id. Further, Plaintiff states that she complained to Osterman about this situation, but Defendant again refused to rectify this issue. Id.

     G. Summer 2018 Complaints

     In June of 2018, Plaintiff regularly became sick from fumes emanating from a candle or plug in air-freshener located in the office of John Skinner, the Commissioner of Labor, which was near her office. Id. ¶ 27. Plaintiff explained her health issues and asked the employees in the office to refrain from using these products, but neither did the employees stop using the air fresheners and candles, nor did her complaint to Osterman about the situation succeed to rectify the problem. Id.  During the remainder of the summer, Plaintiff attempted to use the air conditioner in her office. Id. ¶ 28. Considering that the unit was old and had rust, it spewed dust and particulate matter when turned on and leaked water onto the carpet that grew into mold. Id. Plaintiff later complained to maintenance about the faulty air conditioner, but the unit was not properly repaired. Id.

H.   September 2018 Complaint

In September 2018, Plaintiff complained to Osterman, Huber, and other HR staff members concerning mold that had been growing in the stairwell near her office, which made her sick. Id. ¶ 29.  Defendant retained a cleaning company to remediate the mold problem, but this process involved the use of chemicals that made Plaintiff sick. Id. In response, Plaintiff requested a fan to control the airflow, but this was not provided. Id.

I.   End of 2018 Complaints

In October 2018, the heating system in Plaintiff's office building broke and the heat was rerouted from the radiators to the vents, which spewed black soot and caused her to become sick. Id. ¶ 30. Although a filter from an air conditioning unit was eventually taped over the vent, this did not satisfy Plaintiff because allergens continued to permeate. Id. Plaintiff against complained about this to Osterman, Arnold, Maroni, and Huber, but they did not address this issue. Id. In December 2018, the stairwell in the office building was painted and fumes wafted into Plaintiff's office, which made her ill. Id. ¶ 31. Although Plaintiff inquired about this with Osterman, Osterman told Plaintiff to adjust to these working conditions since they existed throughout the entire building. Id.

J.   Plaintiff's Retirement

At the end of December 2018, Plaintiff decided to retire from her position as the Accounting Assistant IV due to her belief that Defendant refused to provide a reasonable accommodation. Id. ¶ 32. Plaintiff's termination money was being paid out in accordance with the Collective Bargaining Agreement ("the Agreement") that permits a cash payment for unused leave accruals as a severance payment. Def.'s Mem. of Law at 5. Plaintiff had significant medical expenses related to her health condition, including out-of-pocket medical expenses and

the need for a whole house air purifier. <u>Compl</u>. ¶ 33. Plaintiff filed for a hardship waiver so that

her severance would be paid in a lump sum severance payment rather than be paid in three

annual installments as required in Section 44-10 of the Agreement. <u>Id</u>. Defendant denied

Plaintiff's hardship waiver. <u>Id</u>.

III.     <u>Procedural History</u>

Plaintiff commenced this action on October 29, 2020 alleging employment

discrimination, hostile work environment, and retaliation claims under the Equal Protection

Clause, 42 U.S.C. § 1983, and the ADA. <u>See</u> <u>Compl.</u>, DE [1]. On November 19, 2020,

Defendant filed a motion for an extention of time to file an Answer, which was granted by this

Court. <u>See</u> DE [7]. On Janury 5, 2021, Defendant requested a pre-motion conference in

anticipation of filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

On January 6, 2021, this Court denied Defendant's pre-conference motion to dismiss. <u>See</u> DE

[9]. On March 16, 2021, Defendant filed a motion for extension of time to file its motion to

dismiss and to amend the briefing schedule. <u>See</u> DE [10]. This Court granted Defendant's motion

on March 17, 2021.[1] On May 11, 2021, Defendant filed a motion to dismiss Plaintiff's complaint

pursuant to Rule 12(b)(6) for failure to state a claim. <u>See</u> DE [13]. Plaintiff thereafter filed a

reply memorandum of law in opposition to Defendant's motion to dismiss. <u>See</u> DE [14]. Plaintiff

withdrew her hostile work environemnt claim. <u>Id</u>. In response, Defendant filed a memorandum

of law in further support of its motion to dismiss the complaint. <u>See</u> DE [15].

---

[1] Subsequent to this Court granting Defendant's leave to make the instant motion, the case was transferred to the undersigned. <u>See</u> DE [12].

IV.    The Instant Motion

Defendant moves to dismiss the Complaint for a failure to state discrimination and retaliation claims against Defendant under the Equal Protection Clause, 42 U.S. § 1983, and the Americans with Disabilities Act on the basis that her allegations do not extend beyond mere conclusory assertions, and that her claims are time barred under New York's statute of limitations.

Defendant first argues that since Plaintiff filed her complaint on October 30, 2020, all her claims alleging violations of Section 1983 and the ADA that accrued prior to October 30, 2017 are time barred pursuant to the three-year statute of limitations for tort actions under N.Y. C.P.L.R. § 214(5). Thus, according to Defendant, Plaintiff's factual allegations other than her allegations pertaining to her time at the Mineola office and claims regarding constructive discharge and denial of a hardship waiver are time-barred.

With respect to Plaintiff's allegations of Defendant's Equal Protection Clause violations, Defendant next argues that (1) a failure to provide a reasonable accommodation cannot form the basis of an Equal Protection claim because the ADA, Title VII of the Civil Rights Act, and the Age Discrimination in Employment Act have their own structures for private enforcement and (2) the Equal Protection Clause does not encompass Plaintiff's constructive discharge and harassment and retaliation allegations because it does not apply to public employees asserting a "class of one" theory. In response to Plaintiff's Section 1983 claim alleging a violation of due process under the Fourteenth Amendment, Defendant contends that there is no violation of due process since Plaintiff has not alleged that the County deprived her of the opportunity to file an Article 78 proceeding regarding the termination of her employment.

Defendant also contends that Plaintiff has failed to allege municipal liability under Section 1983 since Plaintiff merely references her own situation instead of any formal policy or actions taken by a final municipal policymaker. Defendant further argues that Plaintiff has failed to assert sufficient facts to allege the County's failure to train its employees and merely makes the conclusory allegation that "inadequate training/supervision was so likely to result in the harassment, and/or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision." Compl. ¶ 35.

Defendant contends that Plaintiff has not alleged any facts to support her conclusory assertions regarding the County's discrimination and retaliation practices in violation of the ADA. With respect to Plaintiff's discrimination claim, Defendant provides two arguments. First, Defendant argues that Plaintiff's allegations support the fact that there was no reasonable accommodation that would allow her to perform the functions of her position at the Department of Public Works and that the County demonstrated a long-term good faith engagement in the interactive process since 2015 to find a workable solution to her complaints by transferring her to at least three different building locations and providing her with modifications in her workspace and renovation to the building. Second, Defendant argues that Plaintiff's assertion that her retirement qualifies as a constructive discharge is conclusory and implausible because the County attempted to work with Plaintiff to provide a viable workspace.

With respect to Plaintiff's retaliation claim, Defendant argues that Plaintiff's assertion that the County's denial of a lump sum severance pay-out constitutes retaliation is not actionable since the County paid the severance amount in accordance with the Collective Bargaining Agreement. Thus, according to Defendant, the County acted under the usual course of business rather than conducting an adverse employment action. Further, Defendant argues that Plaintiff

11

has failed to allege that there was a causal connection between her request for an accommodation and an adverse employment action. According to Defendant, even if the denial of the lump sum severance was an adverse employment action, Plaintiff has not alleged a plausible connection to her request for accommodation, which was initially made in 2015, because the County continued to engage in an interactive process with her to find an adequate accommodation until December of 2018.

Having summarized the relevant facts and basis for the motion, the Court turns to the merits thereof.

DISCUSSION

I.      Legal Principles: Standards Applicable on Motions to Dismiss

        A.      Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

II.     Timeliness of the Claims

The applicable statute of limitations for claims asserted pursuant to 42 U.S.C. § 1983 and the ADA is New York's three-year statute of limitations for tort actions under N.Y. C.P.L.R. § 214(5). See Pape v. Board of Educ. of the Wappingers Central School Dist., No. 07-CV-8828 (KMK), 2009 WL 3151200, at *8 (S.D.N.Y. Sept. 29, 2009) (noting that "New York's three-year statute of limitations applicable to personal injury actions is the most analogous state statute of limitations for claims brought under … the ADA, and Section 1983"). A cause of action under Section 1983 accrues once "the plaintiff knows or has reason to know of the injury which is the basis of his action." Veal v. Geracy, 23 F.3d 722, 724 (2d Cir. 1994) (internal quotes omitted).

For statute of limitations purposes, incidents of employment discrimination must be categorized as either discrete acts or continuing violations. Fleming v. Verizon New York, Inc., 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005). A continuing violation may be found "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994); see also Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) (stating that a claimant "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy"). Conversely, a continuing violation may not be premised on "discrete incidents of discrimination that are not related to discriminatory policies or mechanisms." Little v. Nat'l Broadcasting Co., Inc., 210 F.Supp.2d 330, 366 (S.D.N.Y. 2002); see also Nat'l R.R. Passenger Corp. v. Morgan, 563 U.S. 101, 102 (2002) (noting that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Further, a rejection of a proposed

accommodation is "the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days" even though "the <u>effect</u> of the employer's rejection continues to be felt by the employee for as long as he remains employed." <u>Elmenayer v. ABF Freight System, Inc.</u>, 318 F.3d 130, 135 (2d Cir. 2003) (emphasis in original); <u>see also</u> <u>O'Leary v. Town of Huntington</u>, 2012 WL 3842567, at *8 (E.D.N.Y. Sept. 5, 2012) (noting that "an employee who continues working after the denial of a reasonable accommodation may not claim a continuing violation").

If a continuing violation exists, the exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." <u>Annis v. County of Westchester</u>, 136 F.3d 239, 246 (2d Cir. 1998). As a general rule, however, "courts in the Second Circuit have viewed continuing violation arguments with disfavor" and only "compelling circumstances will warrant application of the exception to the statute of limitations." <u>Quadrozzi Concrete Corp. v. City of New York</u>, No. 03 Civ.1905 (LAP), 2004 WL 2222164, at *8 (S.D.N.Y. Sept. 30, 2004). Compelling circumstances have been found "where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy [that is] alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." <u>Ruane v. County of Suffolk</u>, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013) (internal quotation marks omitted).

Plaintiff contends that Defendant conducted a series of related discriminatory events prior to October 30, 2020, (the filing date of the Complaint), that culminated into an "ongoing discriminatory policy and practice by the County, which consistently failed to properly accommodate Solomon, and instead forced her to work in unsafe and unhealthy environments."

Pl's Reply Mem. of Law at 3. For example, Defendant failed to properly install screens in Plaintiff's office to prevent the spread of insects and dismissed multiple requests to ameliorate the smell of chemical cleaning products and poor ventilation in Plaintiff's office. While these instances infer a pattern of neglect towards assuring a fully healthy working environment for Plaintiff, they equate to discrete actions that do not rise to a level of ongoing conduct that amounts to a discriminatory practice. Defendant had offered Plaintiff opportunities to change office locations in Hicksville, East Meadow, and Mineola on several occasions from 2016 through 2018. Further, in October 2016, Millett replaced an air conditioner in the East Meadow office after Plaintiff's complaints about the odor emanating from chemical cleaning products and mold spewing from the old unit. Additionally, Defendant retained a cleaning company to remediate the mold problem in its office stairwell to respond to Plaintiff's complaint in September of 2018. Only until after Plaintiff had changed office locations a second time to the Mineola building in May of 2018, did Defendant indicated an unwillingness to move Plaintiff to another location. Moreover, although Plaintiff realized the negative health effects from the perfume and cleaning product odors and faulty working conditions, she continued to work even after the department leaders had ignored her requests to rectify these problems. Thus, Plaintiff has not pled facts sufficient to invoke the application of the continuing violation exception in light of Defendant's failure to accommodate her health issues.

In applying the statute of limitations, Plaintiff's claims developing from the factual allegations prior to October 30, 2017 are time-barred. Plaintiff is permitted, however, to use such discrete acts as background evidence in support of her claims after October 30, 2017. See Morgan, 536 U.S. at 102 (stating that the statute of limitations does not "bar an employee from using the prior acts as background evidence to support a timely claim").

III.   Failure to State a Claim

   A.  Municipal Liability under 42 U.S.C. § 1983

To state a claim under Section 1983, a plaintiff must allege that the defendant (1) was
acting under color of state law and (2) deprived the plaintiff of rights, privileges or immunities
secured by the Constitution or laws of the United States. Milan v. Wertheimer, 808 F.3d 961,
964 (2d Cir. 2015). Under Monell, a municipal entity "may be liable under 42 U.S.C. § 1983
only if the alleged constitutional violation was caused by the entity's 'policy or custom.'" Monell
v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 694 (1978). Further, there must be a "direct
causal link" between the municipal policy or custom and the alleged constitutional deprivation.
City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). "A plaintiff may plead the existence of
an official policy by alleging (1) a formal policy; (2) actions taken by final municipal
policymakers; (3) a practice so persistent and widespread that it implies the constructive
knowledge of policymakers; or (4) a failure to train or supervise municipal employees amounting
to deliberate indifference to the rights of those whom the employees will come into contact."
Martinez v. New York City Dep't of Educ., 17-CV-3152 (NGG) (CLP), 2018 WL 4054872, at *6
(E.D.N.Y. Aug. 24, 2018). "Deliberate indifference may be inferred if the complaints are
followed by no meaningful attempt on the part of the municipality to investigate or to forestall
further incidents." Vann v. City of New York., 72 F.3d 1040, 1049 (2d Cir. 1995).

Plaintiff's complaint asserts (a) "[t]he County's custom or practice of discriminating
against and/or harassing Plaintiff based [on] his disability, refusing to provide reasonable
accommodations, and/or engaging in protected activities ... The discrminatory and retaliatory
practices were so persistent and widespread that they constitute the constructive acquiescence of
policymakers;" (b) "[s]upervisors failed to properly investigate and address allegations of

harassment and/or discrimination;" (c) "[i]nadequate training/supervision was so likely to result in the harassment, and/or discrmination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision;" and (d) "[p]olicymakers ... engaged in and/or tacitly condoned the harassment and/or discrimination." Compl. ¶ 35. Plaintiff alleges discrimination in the form of department supervisors' inability to adequately advise her coworkers about the use perfume and chemical cleaning products in addition to an otherwise failure to remedy the office conditions that were harmful to her health issues despite repeated complaints. In turn, the Court finds that such allegations are sufficient to plead a claim of <u>Monell</u> liability. At this early state in the litigation, Plaintiff need not prove that she would succeed on this claim, but must merely show that she has a plausible claim that would entitle her to relief.

      B.  <u>Equal Protection Clause of the Fourteenth Amendment</u>

The Equal Protection Clause is implicated to public employers under Section 1983 when "the government makes class-based decision in the employment context, treating distinct groups of individuals differently." <u>Engquist v. Oregon Dept. of Agr.</u>, 553 U.S. 591, 605 (2008). However, "failure to provide a reasonable accommodation cannot form the basis of an Equal Protection claim." <u>O'Leary v. Town of Huntington</u>, No. 11-CV-3754, 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012); <u>see also</u> <u>Bd. Of Trs. Of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 368 (2001) (stating that "if special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause").

Plaintiff contends that "it is well settled that plaintiffs can bring an equal protection claim based on disability discrimination while alleging a distinct violation of a constitutional right." Pl's Mem. of Law at 7. Indeed, a Title VII plaintiff is "not precluded from bringing a concurrent

1983 cause of action, such as a claim for denial of equal protection, so long as the 1983 claim is based on a distinct violation of a constitutional right." Patterson v. County of Oneida, New York, 375 F.3d 206, 225 (2d Cir. 2004). There must, however, be a valid basis on which an Equal Protection claim can stand. Plaintiff's allegations are grounded in Defendant's alleged intentional condonation or deliberate indifference toward her respiratory conditions in the workplace. In particular, Plaintiff's complaints concern Defendant's failure to address her coworkers' use of chemical cleaning products, failure to properly repair a faulty air conditioner unit, and the inability to further relocate her to another office. As noted, a cause of action for a failure to provide a reasonable accommodation must instead originate from positive law, such as Title VII, the ADA, and the ADEA.

While Plaintiff cites to cases in support of her assertion that a party can bring an Equal Protection Clause claim of disability discrimination, none of her cases involve the court addressing an equal protection claim based on a failure to provide a reasonable accommodation as a form of disability discrimination. See Anand v. New York State Dept. of Taxation & Fin., 2013 WL 3874425, at *10 (E.D.N.Y. July 25, 2013) (noting that the plaintiff's pleadings are "devoid of sufficient factual assertions to give rise to an inference of discrimination based on national origin or disability, whether under Title VII or the equal protection clause"); Thomas v. New York City Dept. of Educ., 938 F. Supp. 2d 334, 352 (E.D.N.Y. 2013); Rogers v. Roosevelt Union Free Sch. Dist., No. 09-CV-3862 (MKB), 2012 WL 6163130, at *7-9 (E.D.N.Y. Dec. 7, 2012) (holding that the plaintiff had not provided any evidence that would give rise to an inference of disability discrimination under her equal protection claim for disparate treatment and dismissing her claim for failure to accommodate under the ADA); Pappas v. New York City Bd. Of Educ., No. 07-CV-4312 (FB) (MDG), 2011 WL 128509, at *3 (E.D.N.Y. Jan. 14, 2011)

(dismissing the plaintiff's claims for discrimination on the basis of age, race, and national origin); Stampfel v. City of New York, 2005 WL 3543696, at *3-4 (S.D.N.Y. Dec. 27, 2005) (upholding the plaintiff's age discrimination claim under Section 1983). Thus, Plaintiff's Equal Protection Clause claim is dismissed with prejudice.

### C.  Due Process Clause of the Fourteenth Amendment

In reviewing a dismissal of a public employee's Section 1983 claim for a violation of her Fourteenth Amendment procedural due process rights, the court must determine (1) whether the employee possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest. See Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). Plaintiff generally contends that Defendant has deprived her of "her constitutional rights, as secured by the Fourteenth Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983." Compl. ¶ 35. The Complaint is devoid of any specific facts that would support an inference of a due process violation. Accordingly, Plaintiff's claim of a Fourteenth Amendment due process violation must be dismissed without prejudice.

### D.  Discrimination under the Americans with Disabilities Act

A claim for discrimination under the ADA survives a motion to dismiss if the plaintiff alleges facts to support her prima facie case that (1) she is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. See Morey v. Windsong Radiology Group, P.C., 794 F. App'x. 30, 32 (2d Cir. 2019). "A disabled individual is qualified for a particular position if she can perform the essential functions of the job with or without reasonable accommodation." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 120

(2d Cir. 2004). EEOC regulations define "essential functions" to mean the "fundamental duties to be performed in the position in question, but not functions that are merely marginal." Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003).

The first two elements of this claim are not in dispute. Rather, the parties dispute (1) whether Plaintiff was qualified to perform the essential functions of her job with or without an accommodation and (2) whether the County engaged in an interactive process with Plaintiff to find a reasonable accommodation appropriate for her health conditions. First, Plaintiff's factual allegations make it plausible for the Court to infer that Plaintiff was qualified to perform the essential functions of her job for the County. Plaintiff had worked for the County since 1993 and was ultimately promoted to the title of Accounting Assistant IV. She had performed her job in "an exemplary manner" throughout her career with the County. Compl. ¶ 9. In addition, Plaintiff continued to perform her work even while seeking accommodations that would place her in a work environment that would not exacerbate her respiratory issues.

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A); accord 29 C.F.R. § 1630.9(a). The individual with a disability generally has the responsibility "to inform the employer that an accommodation is needed." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006). Once that request is provided, the ADA contemplates that "employers will engage in an interactive process with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).

20

An employer impedes this process when "the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." Goonan v. Fed. Reserve Bank of New York, 916 F.Supp.2d 470, 480 (S.D.N.Y. 2013). Further, "[c]ourts must deny motions to dismiss … when presented with conflicting facts about the provenance of a breakdown [in the interactive process]." Id.

After reviewing the allegations concerning the willingness of Defendant to address Plaintiff's complaints and drawing all reasonable inferences in favor of Plaintiff, the Court denies Defendant's motion to dismiss Plaintiff's claim of discrimination under the ADA. There are conflicting facts regarding whether Defendant engaged in an interactive process to accommodate Plaintiff in a satisfactory manner. On the one hand, Defendant offered and transferred Plaintiff to new office locations in response to her complaints about the perfume odor and wasp problem in her workspace and retained an outside cleaning company to remediate the mold problem in the Mineola office. Defendant, however, failed to install screens in Plaintiff's office to prevent insects from intruding, failed to repair the ventilation issues in the offices, and failed to adequately warn Plaintiff's colleagues about the harmful effects various odors had on her health. In addition, Karcinski advised Plaintiff's coworkers to not speak with Plaintiff since she was "trouble" and warned Plaintiff that she better not start trouble since she was lucky to have moved offices at all. These incidents reflect Defendant's animosity to act in good faith to accommodate Plaintiff.

Defendant also argues that Plaintiff's decision to retire does not amount to a constructive discharge because the County attempted to work with Plaintiff to provide her with a reasonable

workspace. "Constructive discharge is a subset of 'hostile work environment.' Conditions that do not qualify as a hostile work environment under Title VII are, by definition, not sufficiently intolerable to force an employee to quit." Zick v. Waterfront Comm'n of New York Harbor, No. 11 Civ. 5093 (CM), 2012 WL 4785703, at *7 (S.D.N.Y. Oct. 4, 2012); see also Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012) (noting that "[t]he standard for a hostile work environment claim is demanding, and the plaintiff must prove that the conduct was offensive, pervasive, and continuous enough to amount to a constructive discharge") (internal quotes and citations omitted). Plaintiff has withdrawn her hostile work environment claim. Likewise, her claim of constructive discharge must be denied without prejudice since the factual allegations in the complaint do not satisfy the burden for pleading such a claim.

E.  Retaliation under the Americans with Disabilities Act

In order to establish a prima face case of retaliation under the ADA, a plaintiff must show that (i) she was "engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002).

Plaintiff contends that Defendant retaliated against her after requesting reasonable accommodations for her health conditions by denying a lumpsum severance payment for her hardship waiver. In particular, Plaintiff states that "a retaliatory animus is adequately pled, as Plaintiff pleads that, after her constructive termination, she filed a hardship waiver relating to her severance that could have been granted, but that it was denied in retaliation for her having made repeated accommodation requests." Pl's. Mem. of Law at 6. The first two elements of a claim of retaliation are not at issue. Plaintiff has alleged protected activity in the form of requesting

reasonable accommodation in the workplace on multiple occassion. See Weixel, 287 F.3d at 148. Likewise, it is clear that Defendant had knowledge of this protected activity since Plaintiff advised her supervisors that the various fumes and odors aggravated her respiratory issues. At issue in this motion are the elements of adverse action and causation.

To show an adverse employment action in the retaliation context, a plaintiff must demonstrate that "the challenged action was harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Adams v. City of New York., 837 F. Supp. 2d 108, 121-22 (E.D.N.Y. 2011) (internal quotes omitted). The analysis to determine whether certain conduct amounts to an adverse employment action is necessarily contextual since "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010). Similarly, a causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus direct against the plaintiff by the defendant." Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015) (quoting Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). Plaintiff must plausibly allege that the adverse action would not have taken place in the absence of a retaliatory motive. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015).

Plaintiff in this action asserts the denial of her hardship waiver for a lump sum severance payment as the basis of Defendant's alleged retaliation. While an assessment of this denial alone may not constitute an adverse employment action, a broad construal of Plaintiff's allegations and

a consideration of Defendant's prior interactions with Plaintiff in the aggregate permit the Court

to hold that Plaintiff has plausibly alleged adverse action and causation sufficient to state a claim

of retaliation. Defendant's record of dismissing Plaintiff's requests to repair the workplace

conditions and to advise her colleagues about the detriments of wearing perfume and using

cleaning products to Plaintiff's respiratory issues make it plausible to believe that Defendant

possessed a similar animus regarding its denial of Plaintiff's hardship waiver. Further, Plaintiff's

retirement and subsequent hardship waiver filing occurred during the same month, in December

of 2018, as her last complaint to Osterman regarding the ramifications of the working conditions

on her health. The Second Circuit has "not drawn a bright line to define the outer limits beyond

which a temporal relationship is too attenuated to establish a causal relationship between the

exercise of a federal constitutional right and an allegedly retaliatory and an allegedly retaliatory

action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554

(2d Cir. 2001); see also Summa v. Hostra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (stating that

the Court has discretion to "exercise its judgment about the permissible inferences that can be

drawn from temporal proximity in the context of particular cases").

Despite the foregoing discussion, Plaintiff should be mindful that upon trial of this

matter, or indeed, at pre-trial dispositive motion practice, there may certainly be a different

result. At that point, Defendant may demonstrate that it administered Plaintiff's severance

payment as a cash payment for unused leave accruals in lieu of her request for a lump sum

amount in accordance with the Collective Bargaining Agreement. See Def's Mem. of Law at 5.

At this stage of the case, however, the Court holds that Plaintiff has pleaded a plausible claim of

retaliation, and that Defendant's motion to dismiss the claim of Title VII and ADA retaliation

must be denied.

24

IV.     <u>Leave to Amend</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires"). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." <u>Herbert v. Delta Airlines</u>, No. 12–CV–1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (citing <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)). The instant motion raises the possibility that amending the constructive discharge claim could survive a motion to dismiss. However, amendment of the claims pertaining to the timeliness of Plainitff's claims and claims under the Fourteenth Amendment would be futile. Accordingly, the Court grants Plaintiff leave to amend only with respect to her constructive discharge claim.

CONCLUSION

For the foregoing reasons, this Court holds that Defendants' motion to dismiss for failure to state a claim, appearing as Docket Entry No. 13 herein, is granted in part and denied in part. Specifically, the motion is denied with respect to Plaintiff's municipal liability claims, discrimination and retaliation claims under the ADA. The motion is granted with prejudice regarding Plaintiff's Fourteenth Amendment equal protection and due process claims and the timeliness of Plaintiff's claims. Finally, the motion is granted without prejudice with respect to Plaintiff's constructive discharge claim. Should Plaintiff elect to amend the pleadings regarding her constructive discharge claim, the amendment must be filed by December 29, 2021.

**SO ORDERED.**

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge

Dated: Central Islip, New York
          December 1, 2021